UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
VEERJI EXPORTS,                                            :
                                     Plaintiff,            :
                                                           :       22 Civ. 3661 (LGS)
             -against-                                     :
                                                           :       __OPINION AND ORDER__
CARLOS ST MARY, INC., et al.,                              :
                                     Defendants.  :
                                                           :
----------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Veerji Exports ("Veerji") brings this action against Defendant Brink's Global

Services, Inc. ("Brink's") for gross negligence and for negligent mishandling of a bailment and

against Defendants Carlos St. Mary and Carlos St. Mary, Inc. (collectively, "St. Mary") for

breach of contract and fraud.  Veerji alleges that St. Mary fraudulently took possession of a

shipment of diamonds without paying for them, and could do so in part because of Brink's

negligence.  Default judgment has been entered against St. Mary.  Brink's moves to dismiss and

compel arbitration of the claims against it.  For the reasons below, Brink's motion is granted in

part and denied in part, and the case is stayed pending arbitration of Plaintiff's claims.

I.      BACKGROUND

        The following facts are taken from the Complaint and the parties' submissions on this

motion.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

        In June 2021, Veerji contracted with BVC Brink's Diamond and Jewellery Services LLP

("BVC"), the designated agent of Brink's, in Surat, India, to ship diamonds to a Houston, Texas-

based buyer, St. Mary.  BVC issued house air waybill 99120006815 ("HAWB 6815"), dated

June 14, 2021.  HAWB 6815 states in bold print:  "All service is carried out under the terms and

conditions of the Brink's Global Services Valuable Transport Contract [the "VTC"] (where such services are performed by Brink's)".  The VTC is printed in its entirety on the reverse side of HAWB 6815.

The VTC's arbitration clause is contained in Section XI.B and titled "Dispute Resolution."  It provides:

> You and Brink's agree that, except for a claim relating to a Shipment originating within the United States, any dispute arising out of or in connection with this Contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce. . . . The parties agree that for any claim or dispute arising out of, in connection with, or relating to any Shipment originating within the United States, whether based in contract, tort or otherwise, . . . shall be governed by the laws of the State of New York, without regard to conflict of laws principles, and . . . shall be adjudicated exclusively in U.S. District Court for the Southern District of New York.  The parties expressly and irrevocably submit to the exclusive jurisdiction of the U.S. District Court for the Southern District of New York for the purposes of the adjudication of any such claim or dispute.

Section I of the VTC defines the following relevant terms: "'Shipment' means one or more sealed or locked containers of Property, collected or received by Brink's in one place at any one time, with one or more designated Destinations or Consignees."  "'Destination' and 'Consignee' means the recipient or receiving location designated by You as the completion point of the Service that Brink's is providing to You as described in this Contract."  "Contract" is defined as the VTC and other documents "that refer specifically to [the VTC] or are issued pursuant to [the VTC] such as, for example, air waybills."

As noted, air waybill HAWB 6815 contains the entire VTC and states that the Shipper's name is Veerji Exports with an address in Surat, India.  The Consignee is "Carlos St Mary Inc" at an address in Houston, Texas.

On June 15, 2021, Veerji sent a letter to BVC requesting that, once the diamonds arrived in Houston, the "shipment will remain in the possession and custody of Brink's and will be released to the consignee [St. Mary] only upon [Veerji's] instruction to [Brink's] to release the

shipment."  Veerji did not want the diamonds released to St. Mary until Veerji received payment. St. Mary asked for an opportunity inspect the diamonds, but there was no facility to do so at the Brink's facility in Houston.  Veerji consented to St. Mary's request to view the diamonds instead at the Brink's facility in New York, provided that St. Mary cover all applicable costs.

Brink's and St. Mary then proceeded to negotiate to have the diamonds sent from Houston to New York.  A Brink's employee produced a new house air waybill numbered 11021207621 ("HAWB 7621").  HAWB 7621 states in small capital letters "All service is carried out under the terms and conditions of the Brink's Global Services Valuable Transport Contract, a copy of which is available on request."  HAWB 7621 listed the same names and addresses for the Shipper (Veerji) and Consignee (St. Mary), but in a field labeled "on behalf of" it listed the Brink's Houston office, and in the field labeled "also notify or final delivery to" it listed the Brink's New York office.

St. Mary ultimately took the diamonds from BGC's New York office without paying for them, leading to the instant dispute.  While Veerji's submission dwells on the circumstances under which St. Mary took possession of the diamonds, those merits issues are immaterial to the present motion to compel arbitration.

## II.    STANDARD

"The FAA embodies a national policy favoring enforcement of arbitration agreements founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, [their] disputes."  *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019).

Prior to compelling arbitration, the district court must first determine two threshold issues:  (1) whether the parties agreed to arbitrate, and (2) the scope of that agreement.  *Id.*  In evaluating whether the parties have entered into a valid arbitration agreement and their intent, the court must "apply ordinary state-law principles that govern the formation of contracts."  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

A court may order arbitration only when "satisfied that the parties agreed to arbitrate that dispute."  *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (cleaned up).  In deciding this issue, courts apply a "standard similar to that applicable for a motion for summary judgment."  *Id.* at 179-80 (internal quotation marks omitted).  Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party."  *Id.* at 180 (internal quotation marks omitted).  "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings."  *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (internal quotation marks omitted).

### III.    DISCUSSION

The motion to compel arbitration is granted because Plaintiff does not dispute that it is bound to the arbitration agreement, and because Plaintiff's claim does not relate to "a Shipment that originated in the United States."

### A.  The Issue of Arbitrability is Not Arbitrable

As a threshold matter, this Court has the power to decide arbitrability.  Courts generally resolve doubts over the scope of arbitrable issues in favor of arbitration.  *Daly*, 939 F.3d at 421. But "'threshold questions of arbitrability,' such as whether the arbitration agreement applies to a particular dispute, 'presumptively should be resolved by the court and not referred to the arbitrator.'"  *DDK Hotels*, 6 F.4th at 317 (quoting *Doctor's Assocs.*, 934 F.3d at 250-51).  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *Id.* (cleaned up).

The incorporation of procedural rules that commit the arbitrability question to the arbitrator may be "clear and unmistakable" evidence, if "the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes."  *Id.* at 318-19.  But where "the arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited set of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice."  *Id.* at 319 ("Where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute we have identified ambiguity as to the parties' intent to have questions of arbitrability decided by an arbitrator" (cleaned up) (quoting *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014))).

Here, the VTC on its face provides no evidence that the parties agreed to arbitrate the issue of arbitrability.  The parties' adoption of the arbitration rules of the International Chamber of Commerce (the "ICC Rules") to govern any arbitration also does not reflect the parties' agreement to have the question of arbitrability resolved by arbitration.  The ICC Rules provide that questions regarding the "scope of the arbitration agreement" will be decided by the arbitral

5

tribunal.  *See* ICC, *2021 Arbitration Rules Article 6: Effect of the Arbitration Agreement*,

https://iccwbo.org/dispute-resolution-services/arbitration/rules-of-arbitration/#article_6 (last

visited Dec. 1, 2022) (ICC Rules effective as of Jan. 1, 2021).  But the arbitration clause in the

VTC requires arbitration and application of the ICC Rules for only some disputes.  Other

disputes are required to be resolved by this Court, where presumptively issues of arbitrability are

determined by the court.  *See DDK Hotels*, 6 F.4th at 317.  Because the arbitration clause

"contains exclusionary language suggesting that the parties consented to arbitrate only a limited

set of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability,

standing alone, does not suffice."  *DDK Hotels*, 6 F.4th at 319.

Lacking clear and unmistakable evidence to the contrary, the issue of arbitrability is for

the Court.[1]

## B.  The Parties' Dispute Must be Arbitrated

The VTC's arbitration clause provides that "any dispute arising out of or in connection

with" the VTC must be arbitrated, "except for a claim relating to a Shipment originating within

the United States."  The parties agree that their dispute is arbitrable unless the exception applies.

The issue is whether there was one Shipment or two.  Plaintiff, who seeks to litigate in this Court

based on the exception, argues that there were two Shipments, the latter of which originated

within the United States in Houston and gave rise to Plaintiff's claim.  Brink's, which seeks to

---

[1] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), is not to the contrary.
*Henry Schein* involved an arbitration clause with a similar carve-out for, *inter alia*, claims
seeking injunctive relief, which arguably applied to the dispute at issue.  *Id.* at 528.  But the
Court held only that the lower courts could not disregard "clear and unmistakable evidence" of
intent to arbitrate arbitrability based on an exception that the Court found to conflict with the text
of the Federal Arbitration Act.  *Id.*  The Court expressly took no view on whether there was, in
that case, such "clear and unmistakable evidence."  *Id.* at 531.

compel arbitration, argues that there was just one Shipment, which originated in India and that the exception to arbitration does not apply.  Brink's has the better argument.

The VTC defines "Shipment" as "one or more sealed or locked containers of Property, collected or received by Brink's in one place at any one time, with one or more designated Destinations or Consignees."  In other words, a Shipment occurs when Brink's receives a locked container of property with a designated Consignee.  The determinative language here is "collected or received by Brink's."  The locked containers of rough diamonds were collected or received by Brink's in India from Plaintiff, and remained in Brink's possession as the containers passed through Houston en route to the Consignee, St. Mary, in New York.  Brink's did not collect or receive the containers anew in Houston, as Brink's already had the containers in its possession.  The VTC also defines "Consignee" as the designated "completion point of the Service" Brink's provided to Veerji.  No Shipment could have originated in Houston because the Shipment that originated in India never reached its "completion point" until the Consignee, St. Mary, took possession of the diamonds in New York.

Contrary to Veerji's argument, the fact that Brink's issued a new HAWB when it arranged to reroute the Shipment to New York does not mean that that a new Shipment originated in Houston.  HAWB 7621 listed the same shipper (Veerji) and Consignee (St. Mary) as HAWB 6815.  While Brink's internal tracking is not dispositive, it is telling that Brink's never marked the HAWB 6815 as "DELIVERED" in its internal tracking system, but it marked HAWB 7621 as "DELIVERED" when the diamonds were delivered to St. Mary in New York.  Veerji also concedes that it took no part in the logistics of rerouting the shipment from Houston to New York, which Brink's instead worked out with St. Mary.  Veerji's argument that the diamonds were under St. Mary's control at that point -- and thus effectively delivered to St. Mary

7

in Houston -- is unpersuasive given that Brink's was acting pursuant to Veerji's letter providing

consent to the rerouting.  Instead, Brink's argument that it simply redirected the Shipment, at St.

Mary's expense but consistent with Veerji's request and consent, is consistent with the

undisputed factual record.  The Shipment thus originated outside of the United States, and

Veerji's claims arising therefrom are subject to the arbitration clause.

While the primary relief Brink's seeks is dismissal of the case, Brink's also asks the

Court in the alternative to stay the case pending arbitration.  A stay is required if it is requested in

these circumstances.  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in part and DENIED in

part.  Defendant's motion to dismiss is denied, but Defendant's motion to compel arbitration is

granted and the action is STAYED.  The Scheduling Order at Docket No. 69 is vacated, and all

other pending motions are denied without prejudice.  **Sixty days** after the date of this Opinion

and Order, and every **sixty days** thereafter, the parties shall file a joint letter apprising the Court

of the status of any arbitration.  The parties are directed to inform the Court promptly of any

resolution of the arbitration proceedings or any other event that may affect the stay of this matter.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 46, 73 and

75.

Dated: December 5, 2022
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**